On respondent Beneficial Fire and Casualty Insurance Company's petition for reconsideration filed November 3, and appellants' response to petition for reconsideration filed December 12, reconsideration allowed; former opinion (235 Or App 99, 230 P3d 103 (2010)) modified and adhered to as modified August 17, 2011

CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND EXCESS INSURANCE COMPANY, LIMITED,
*Plaintiffs-Appellants,*

*v.*

MASSACHUSETTS BONDING AND INSURANCE COMPANY,
succeeded in interest by Hanover Insurance Company;
Maine Bonding And Casualty Company,
a Maine corporation,
dba Maryland Casualty Company,
dba Zurich Insurance Company;
RLI Insurance Company, an Illinois corporation;
The Home Indemnity Company, succeeded in interest by
The Home Insurance Company,
a New Hampshire corporation;
Highlands Insurance Company, a Texas corporation,
dba Cigna Property and Casualty Insurance Company,
aka Cigna Insurance Company of North America,
a Pennsylvania corporation, succeeded in interest by
CCI Insurance Company, succeeded in interest by
Century Indemnity Company,
dba Cigna Specialty Insurance Company, aka Cigna;
Century Indemnity Company, a Pennsylvania corporation,
dba Cigna Property and Casualty Insurance Company,
aka Cigna, individually and as successor in interest to
CCI Insurance Company, the successor in interest to
Insurance Company of North America,
*Defendants,*

*and*

BENEFICIAL FIRE AND CASUALTY INSURANCE COMPANY,
succeeded in interest by
JC Penney Life Insurance Company,
then succeeded in interest by
Stonebridge Life Insurance Company,
a Vermont corporation;
Continental Insurance Company,

a New Hampshire corporation,
dba CNA Insurance Companies and
as successor in interest to
Glens Falls Insurance Company,
a Delaware corporation,
dba CNA Insurance Companies;
National Union Fire Insurance Company
of Pittsburgh, PA, a Pennsylvania corporation;
and Industrial Indemnity Company,
succeeded in interest by
United States Fire Insurance Company,
a New York corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
030403995; A129974

260 P3d 830

Christopher T. Carson and Kilmer, Voorhees & Laurick, P.C., for petition.

John Folawn and Folawn Alterman & Richardson, LLP, for response.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Defendant Beneficial Fire and Casualty Insurance Company (Beneficial) petitions for reconsideration of our decision in *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 235 Or App 99, 230 P3d 103 (2010), requesting that we address an assignment of error that we initially declined to reach. For the reasons that follow, we allow the petition, reach and reject that assignment of error, and modify our original opinion accordingly.

Although the circumstances giving rise to this petition are somewhat complicated, the issue on reconsideration is actually quite narrow. Plaintiffs and defendants issued insurance policies to Zidell, their common insured.[1] Zidell, which operated a scrapping business on Moody Avenue along the Willamette River, later became the target of an environmental cleanup action and turned to its insurers for coverage. When the insurers denied coverage, Zidell commenced an action against them, including plaintiffs and defendants. Defendants later settled with Zidell, but plaintiffs did not. Ultimately, Zidell obtained a judgment against plaintiffs in the underlying coverage action, which plaintiffs then appealed.

Meanwhile, following the entry of judgment in the coverage action, plaintiffs filed a contribution action against defendants, the settling insurers. Plaintiffs alleged that, having paid a disproportionate share of a common obligation to Zidell, they were entitled to pro rata contributions from defendants. The trial court granted summary judgment in favor of defendants and dismissed plaintiffs' claims.

The appeals in the underlying coverage action and the inter-insurer contribution action have since wended their way through the Oregon appellate courts. The first decision was issued in the underlying coverage action, *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 222 Or App 453, 194 P3d 167 (2008), *modified on recons*, 225 Or App 257, 201 P3d 912 (2009). In that appeal, plaintiffs argued, among other things, that the trial court had incorrectly allocated the burden to

---

[1] The parties insured a number of related entities, including ZRZ Realty Co. For ease of reference, we refer to those entities collectively as Zidell.

plaintiffs to prove that Zidell's pollution was neither "unexpected nor unintended." We agreed with plaintiffs on that issue and ultimately reversed and remanded the case; we also vacated the statutory attorney fee award against plaintiffs. The Supreme Court allowed review. *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 346 Or 363, 213 P3d 577 (2009).

While the coverage case was pending in the Supreme Court, we issued our decision in this case regarding contribution. *Certain Underwriters*, 235 Or App 99. We reversed in part and remanded a judgment dismissing plaintiffs' claims for inter-insurer contribution from defendants. In the process, we declined to reach one of plaintiffs' assignments of error, which concerned plaintiffs' right to contribution for attorney fees awarded to Zidell in the coverage action. We reasoned, "In *ZRZ Realty*, we vacated the underlying award of attorney fees that is the basis for this assignment of error. 222 Or App at 495. Accordingly, we do not reach plaintiffs' fourth assignment." *Id.* at 116-17. The Supreme Court denied a petition for review of our decision. *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 349 Or 173, 243 P3d 468 (2010).

However, exactly one week before denying review in this case, the Supreme Court issued its decision in the coverage case. *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 241 P3d 710 (2010), *adh'd to as modified on recons*, 349 Or 657, 249 P3d 111 (2011). One aspect of that decision is pertinent here: The court explained that our ruling reversing the trial court's allocation of the burden of proof—which the Supreme Court affirmed—had no effect on the trial court's award of attorney fees; for that reason, the court held, we "erred in reversing and vacating the fee awards." 349 Or at 150.

And that brings us to the issue that is the subject of Beneficial's petition for reconsideration. After the Supreme Court denied defendants' petition for review in this case, but before the appellate judgment issued, Beneficial filed a late petition for reconsideration in light of the Supreme Court's intervening decision in *ZRZ Realty*. *See* ORAP 6.25(2) ("A petition for reconsideration shall be filed within 14 days after the decision."). In its petition, Beneficial explained:

"Under the Supreme Court ruling [in the coverage case], Zidell clearly has an *entitlement* to attorney fees based on [plaintiffs'] breach of the duty to defend Zidell. The question of whether plaintiff[s] may allocate that attorney fee award among defendants in this case under principles of equitable contribution is a 'live' issue in this case again, not moot as it was prior to this Court's decision, and is the substance of plaintiffs' Assignment of Error No. 4.

"The issue has been fully briefed and orally argued in this Court. It is ripe for decision and would use little of the resources of this Court, which is already familiar with this case, while resolving a major issue, which could have a major impact on whether this case is tried or settled."

(Emphasis by Beneficial.)

Plaintiffs, for their part, have no objection to the petition for reconsideration. Under the unique circumstances of this case, we exercise our discretion, as a matter of judicial efficiency, to address plaintiffs' fourth assignment of error. We therefore waive the 14-day requirement in ORAP 6.25(2) and allow the late petition for reconsideration. ORAP 1.20(5) ("For good cause, the court on its own motion or on motion of any party may waive any rule."); ORAP 9.30(2) ("The Court of Appeals has authority to decide matters, including motions, in an appeal that was filed in that court in the following circumstances: (a) If the case is not pending in the Supreme Court, until the appellate judgment issues.").

We turn, then, to the merits of plaintiffs' fourth assignment of error. In their complaint for inter-insurer contribution, plaintiffs alleged that they are liable for attorney fees in the coverage action pursuant to ORS 742.061, and that defendants likewise would have been liable for those attorney fees had they not settled before the judgment was entered in Zidell's favor. Defendants, in response, moved for summary judgment on that issue, arguing, among other contentions, that statutory attorney fees were not a common obligation among the insurers and, for that reason, defendants were not liable for any share of those attorney fees. The trial court granted defendants' motions for partial summary judgment.[2]

___

[2] As we explained in our original opinion, the trial court, after a hearing on various summary judgment motions, explained that it was "in agreement with every

On appeal, plaintiffs argue that principles of equity do not allow defendants to escape liability for attorney fees awarded to Zidell in the coverage action. According to plaintiffs, "[w]hile the award of attorney fees to Zidell was based upon ORS 742.061, [plaintiffs'] right to contribution is not. [Plaintiffs'] right to contribution is based upon an implied promise that a co-obligor to a common obligation must pay a fair share." In plaintiffs' view, defendants cannot escape that common obligation simply by settling out of the litigation before judgment.

Defendants, meanwhile, argue that plaintiffs' premise is flawed: an attorney fee award under ORS 742.061 is not the type of common liability among insurers that gives rise to equitable contribution, at least in this posture. We agree with defendants.

Unlike the duty to defend, which is a shared obligation that arises independent of completed litigation, liability for attorney fees under ORS 742.061 is a statutory obligation that arises only after the insured prevails at trial. ORS 742.061(1) provides, in part:

"Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, *and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action*, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

(Emphasis added.) Under that statute, an insured is not entitled to attorney fees unless (1) settlement is not made within six months from the date proof of loss is filed; (2) an action is brought on the policy; *and* (3) the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action.

_____

point made by every defendant in all of defendants' papers," with one exception not relevant here. The court then entered an order consistent with its preliminary view, which included granting defendants' motions for partial summary judgment on the issue of contribution for statutory attorney fees.

In the coverage action, Zidell never satisfied the statutory prerequisites for an entitlement to attorney fees against defendants, specifically, that Zidell obtain a recovery that exceeds defendants' highest tenders. Zidell and defendants settled—that is, Zidell *accepted* defendants' highest tenders. Consequently, defendants never shared plaintiffs' liability for attorney fees, because defendants were never liable for attorney fees in the first place.

*Van Winkle v. Johnson*, 11 Or 469, 473, 5 P 922 (1884)—the case on which plaintiffs base their entitlement to contribution for prevailing party attorney fees—is distinguishable on its facts. In *Van Winkle*, the plaintiff and the defendant were sureties upon a promissory note executed by Johnson, who died insolvent. When the note was due, the bank that held it brought an action to enforce collection. The defendant was not served with process after the action commenced; however, the defendant paid the bank his share of the note before judgment. The plaintiff, meanwhile, continued to litigate and ultimately had a judgment entered against him for "the balance due upon the note, including costs, *and a certain sum adjudged reasonable as attorney's fee, as stipulated in the note.*" 11 Or at 470 (emphasis added). The plaintiff brought an action against the defendant to compel him to contribute his share of the costs and attorney fees. The Supreme Court held that the defendant was liable for his share of the costs and attorney fees, despite the fact that he had paid part of the balance on the note before the bank obtained a judgment.

Importantly, in *Van Winkle*, the entitlement to attorney fees flowed from the promissory note itself—"a certain sum adjudged reasonable as attorney's fee, *as stipulated in the note.*" 11 Or at 470 (emphasis added). Thus, the sureties shared an underlying contractual obligation that they simultaneously breached, thereby causing the bank to file an action to enforce the note. In fact, in discussing the parties' obligation to pay the note when it came due, the court quoted the following passage:

> " 'The failure to pay which occasioned the cost was imputable to the defendant as much as the plaintiff. The plaintiff paid the execution including the costs. *The costs cannot be*

*distinguished from the debt. Every equitable principle which entitles the plaintiff to contribution for the one, applies equally to the other.'* "

*Id.* at 472 (quoting *Davis v. Emerson*, 17 Me 64, 64 (1840)) (emphasis added).

In that context—sureties on a promissory note that included a stipulated attorney fee provision—the court held that equity would require the defendant to pay a proportionate share of the costs:

"It is clear that neither had any defense to the note; and whenever an action should be brought, the judgment with its incidents was inevitable. * * * So far as payment is concerned, they were equally in fault, and neither had done such things with respect to each other that would furnish any just reason for exoneration from liability. Suits for contribution against a co-surety for costs, like many other suits in equity, depend very much upon the particular facts of each case. Considerations of right and justice as applicable to the facts are the controlling principle in determining the result."

*Id.* at 473-74.

In this case, however, plaintiffs' liability for attorney fees does not arise out of a contractual obligation shared with other insureds; rather, the liability is statutory and, for the reasons expressed above, is not a liability that plaintiffs and defendants have ever shared.[3] The trial court did not err in granting defendants' motion for partial summary judgment. We therefore modify our original opinion accordingly.

Reconsideration allowed; former opinion modified and adhered to as modified.

---

[3] In any event, ORS 742.061 is designed to encourage "settlement of insurance claims and reimbursement of insureds who are forced to litigate to recover on their policies." *Certain Underwriters*, 235 Or App at 118. Defendants settled their claims with Zidell while plaintiffs continued to litigate. Plaintiffs have not explained, nor do we understand, how or why principles of equity should contravene the policy in ORS 742.061 by imposing an additional burden on settling insurers. Thus, even if plaintiffs were able to demonstrate a common obligation, we are not persuaded that equitable contribution would be available in light of the policy expressed in the statute.